**Margaret A. PEEBLER and Tim Nay, Plaintiffs,**

v.

**Janet RENO, Attorney General of the United States of America, Defendant.**

**Civil No. CV 97–256–HA.**

United States District Court, D. Oregon.

May 5, 1997.

James S. Coon, Swanson, Thomas & Coon, Portland, OR, for Plaintiffs.

Frank W. Hunger, Assistant Attorney General, Kristine Olson, U.S. Attorney, District of Oregon, Craig J. Casey, Assistant U.S. Attorney, Portland, OR, Sheila M. Lieber, Eric S. Angel, U.S. Dept. of Justice, Civil Division—Federal Programs Branch, Washington, DC, for Defendant.

## AMENDED OPINION and ORDER

HAGGERTY, District Judge:

On February 14, 1997, Plaintiffs filed this action for declaratory relief seeking a judicial declaration that 42 U.S.C. § 1320a–7b(a)(6) is unconstitutional. On April 2, 1997, Defendant filed a motion to dismiss the action for lack of subject matter jurisdiction. For the reasons that follow, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

In 1988, Congress passed 42 U.S.C. § 1396p(c) ("§ 1396") which requires a period of ineligibility for Medicaid benefits in response to the applicant's transfer of assets for the purpose of obtaining benefits. The period of ineligibility for Medicaid benefits is directly proportionate to the value of the assets that were transferred. To determine the period of ineligibility, the value of the assets transferred is divided by the statewide average monthly nursing home cost (as determined by the state health agency.)

Margaret Peebler is an 87–year–old widow with no living children or siblings. In November of 1996, while living independently in an apartment, she fell several times. After two stays in the hospital, she went to live in the Centennial Health Care Center in Gresham, Oregon, in December 1996. While Mrs. Peebler is in a wheelchair and is expected to

require 24–hour care for the rest of her life, she is not mentally incapacitated.

In January 1997 Mrs. Peebler "gave up" her apartment, and upon discharge from Centennial she will enter an adult foster care or assisted living facility. The cost of care in such a facility is between $1,800 and $3,000 per month. Mrs. Peebler's total assets as of February 1997 were $14,824.22. She has no insurance to cover long term care and cannot qualify for such insurance. Mrs. Peebler's only income is a monthly $393 Social Security check.

Among other requirements, an individual's assets must be below $2,000 to qualify for Medicaid. When Mrs. Peebler's assets fall to that level, Medicaid will pay for her long-term care. However, all of her monthly Social Security check will be applied towards her long-term care, except for a $30–75 monthly personal needs allowance.

In an effort to retain the ability to meet her future personal needs, Plaintiff attorney Tim Nay advised Mrs. Peebler to transfer her assets so that she could meet the requirements for Medicaid. On February 12, 1997, Mrs. Peebler transferred $7,785 to her great-nephew. It is intended that the great-nephew use this money to provide for Mrs. Peebler's personal needs for the rest of her life.

Pursuant to § 1396, Mrs. Peebler is ineligible to receive Medicaid benefits for three months. This is due to the application of OAR 461–140–295(2), which sets the average monthly cost of private nursing facility services at $2,595. Put another way, the period of ineligibility [3 months] = the amount transferred [$7,785] ÷ average monthly cost of services as determined by the state [$2,595]. The period of ineligibility is intended to duplicate the amount of medical care the individual would have been able to afford but for the transfer of assets.

Section 217 of the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104–191, 110 Stat. 2008 (codified at 42 U.S.C. § 1320a–7b(a)(6)) was signed into law on August 21, 1996, and had an effective date of January 1, 1997. Section 217 applies to any individual who "[k]nowing-ly and willfully disposes of assets … in order for an individual to become eligible for [Medicaid], if disposing of the assets results in the imposition of ineligibility for such assistance under [42 U.S.C. § 1396p(c) ]."

Plaintiffs have been neither prosecuted nor threatened with prosecution under § 217. Nonetheless, they filed this action on February 14, 1997, seeking a declaratory judgment that § 217 is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Defendant has moved to dismiss the action for lack of subject matter jurisdiction. Specifically, Defendant claims that Plaintiffs lack standing to invoke the jurisdiction of this court.

## STANDARD OF REVIEW

■ The Declaratory Judgment Act (the Act) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. s 2201. The "actual controversy" requirement of the Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Thus, the Act requires no more stringent showing of justiciability than the Constitution does.

■ For a case to be constitutionally justiciable, the plaintiff must have standing. In order to have standing to invoke the power of a federal court, a plaintiff must establish, at a constitutional minimum, three propositions. *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir.1996) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). First, the plaintiff must demonstrate that he has suffered an "injury in fact" which is "(a) concrete and peculiarized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136. Second, the injury must be fairly traceable to the challenged action of the defendant. *Id.* at 560, 112 S.Ct. at 2136. Third, it must be likely, and not merely speculative, that the injury will be redressed by a favorable judicial decision. *Id.* Plaintiff bears the burden of establishing each of these requirements, and failure to demon-

strate any one is a fatal defect, mandating dismissal. *Id.*

## DISCUSSION

 Defendant's motion to dismiss for lack of subject matter jurisdiction under F.R.C.P. 12(b)(1) asserts that enforcement of § 217 against Plaintiffs is neither "actual" nor "imminent" enough to satisfy the standing requirements of Article III of the Constitution and that the Plaintiffs therefore lack standing to challenge the constitutionality of § 217 in federal court. As Defendant points out, "[t]he mere existence of a statute, which may or may not ever be applied to plaintiffs, is not sufficient to create a case or controversy within the meaning of Article III." *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir.1983) (citation omitted).

Plaintiffs have not been indicted, arrested, threatened with arrest, or even granted an "advisory opinion" by the Department of Health & Human Services concerning the application of § 217. Further, the government has represented in its motion to dismiss that, if Mrs. Peebler waits until May 13, 1997 to apply for Medicaid benefits, "no period of ineligibility for such benefits will be imposed." Defendant's Memorandum, p. 4. If no period of ineligibility is imposed, neither of the Plaintiffs can be prosecuted under § 217. Under these circumstances, enforcement of § 217 against them is not "actual" or "imminent." Consequently, Plaintiffs lack standing to bring this suit in federal court.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss for lack of subject matter jurisdiction (# 11) is GRANTED and all pending motions are Denied as moot. This action is dismissed with prejudice.

IT IS SO ORDERED.