OPINION OF THE COURT
Edwin Kassoff, J.
This is a proceeding pursuant to article 81 of the Mental Hygiene Law seeking the appointment of a guardian for the personal needs and property management of the alleged incapacitated person (hereinafter AIP) Betty Gersten. Petitioner is the son of the AIP. The petition asks that the guardian be given the authority to transfer the AIP’s residence located at 17 West 12th Road, Broad Channel, New York, now owned solely by the AIP, to petitioner with a life estate to be retained for the life of the AIP, to transfer certain assets to the AIP’s children, and to allow reimbursement of certain funds to the petitioner from funds held jointly by the AIP and the petitioner.
The AIP is a 76-year-old woman who currently resides at the Ocean view Nursing Home in Far Rockaway, New York. Petitioner instituted this proceeding by an order to show cause seeking to be appointed the personal needs and property management guardian for his mother. The petition alleges that the AIP suffers from severe dementia, is not oriented as to time and place, and needs assistance with the activities of daily living. The petition also states that the AIP broke her hip in a fall that occurred in 1996. The AIP’s physician, Ave-lino S. Rosales, submitted an affidavit, which is attached to the petition, that states that the AIP suffers from severe dementia, is unable to make any decision regarding her personal property and medical needs, and that the AIP is not expected to recover from her ailments. At the hearing held before this court on January 27, 1997, the presence of the AIP was waived by the court as the court found that the AIP could not understand, or meaningfully participate in, the proceedings (see, Mental Hygiene Law § 81.11 [c] [2]).
Article 81 creates a guardianship system that is tailored to meet the specific needs of the individual (Mental Hygiene Law § 81.01). Under the statute, the guardian is given only those powers which he needs and no more. In this way, article 81 seeks to foster the least restrictive form of intervention consistent with an individual’s self-determination (Mental Hygiene Law § 81.02 [a] [2]). Article 81 provides a two-prong test for determining whether a guardian should be appointed for an in *694 dividual. Under Mental Hygiene Law § 81.02 (a) (1), the court can appoint a guardian for a person if it first determines that the appointment is necessary to provide for the personal needs and property management of the person. To satisfy the second prong, the individual must agree to the appointment or be incapacitated (Mental Hygiene Law § 81.02 [a] [2]; Matter of Ehmke, 164 Misc 2d 609, 613; Matter of Kustka, 163 Misc 2d 694, 698).
Under section 81.02 (b), a determination of incapacity must be based on clear and convincing evidence that the person is likely to suffer harm because he is unable to provide for his personal needs and/or property management and he cannot adequately understand and appreciate the nature and consequences of his inability. Article 81 further requires the court to give "primary consideration" to one’s functional level and functional limitations in making a determination of incapacity (Mental Hygiene Law § 81.02 [c]). This functional evaluation considers how an individual manages his activities of daily living, such as eating, shopping, dressing, toileting, housekeeping, and money management (Mental Hygiene Law § 81.03 [h]).
Applying these principles to the matter at hand, the court finds that there is clear and convincing evidence that the AIP is likely to suffer harm because she cannot provide for her personal needs and property management and is unable to adequately understand and appreciate the nature and consequences of this inability. The AIP suffers from severe dementia and cannot make any decision with regard to her personal or financial affairs. She is unable to communicate intelligently, and her condition is not likely to improve. Therefore, the court will appoint petitioner as guardian for the personal needs and property management of the AIP.
Petitioner seeks the authority to transfer the residence owned by the AIP to the petitioner, but retain a life estate for the life of the AIP, and to engage in Medicaid planning by transferring some of the AIP’s assets to her children. Petitioner argues that notwithstanding section 217 of the Health Insurance Portability and Accountability Act of 1996 (Pub L 104-191 [the Act]), which makes it a crime to transfer assets in order to qualify for Medicaid under certain circumstances, the transfer of the AIP’s residence and some of her other assets, if done properly, should not result in the imposition of criminal penalties nor affect the AIP’s eligibility to receive Medicaid.
Medicaid is a joint Federal-State program established in 1965 with the passage of title XIX of the Social Security Act, *695 to pay the medical expenses of individuals who can demonstrate financial need (see, 42 USC § 1396 et seq.). The purpose of the Medicaid program was to provide medical assistance to the poor aged, blind and disabled persons and families with dependent children (42 USC § 1396; Kassoff and Robert, Elder Law and Guardianship in New York § 7:4, at 217 [1996]). There are strict eligibility requirements for Medicaid, and an applicant bears the burden of establishing eligibility (18 NYCRR 360-2.2 [f] [1] [i]). In 1996, a Medicaid applicant was not permitted to have more than $4,850 in savings.
In 1972, Congress imposed criminal penalties for the making of false representations or statements for acts involving Medicare or Medicaid (42 USC § 1320a-7b [a] [l]-[5]). These provisions provide the basis for prosecuting anyone who makes or causes to be made any false statements or representations that conceal or fail to disclose material facts with the intent to fraudulently secure either Medicaid benefits or payments for services provided to the program (Kassoff and Robert, op. cit., § 7:114, at 254). The statute also provides that criminal penalties can be imposed on providers of Medicare and Medicaid services who knowingly or willfully solicit or receive illegal remunerations (42 USC § 1320a-7b [b]), who knowingly or willfully make false assignment of payment provisions (42 USC § 1320a-7b [e]).
On August 21, 1996, the Kassebaum-Kennedy Health Insurance Portability and Accountability Act of 1996 was signed into law. This legislation, which became effective on January 1, 1997, added a new section to the above statute imposing criminal penalties for acts involving Medicare or Medicaid. Section 217 of the Act, codified at 42 USC § 1320a-7b (a) (6), criminalizes certain transfers of assets made for the purpose of qualifying for Medicaid benefits to pay for nursing home care. The statute specifically provides, in pertinent part, that:
"Whoever * * *
"(6) knowingly and willfully disposes of assets (including by any transfer in trust) in order for an individual to become eligible for medical assistance under a State plan under [title] XIX, if disposing of the assets results in the imposition of a period of ineligibility for such assistance * * * shall (i) in the case of such a statement, representation, concealment, failure, or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program, be guilty of a felony and upon conviction thereof fined not more than $25,000 or impris *696 oned for not more than five years or both, or (ii) in the case of such a statement, representation, concealment, failure, or conversion by any other person, be guilty of a misdemeanor and upon conviction thereof fined not more than $10,000 or imprisoned for not more than one year, or both.” (42 USC § 1320a-7b [a] [6].)
The statute also provides that the State can further suspend or limit the eligibility of that individual for Medicaid for an additional year.
When an individual applies for Medicaid for nursing home care, the State Medicaid Agency looks back at transfers of assets made in the prior 36 months, or 60 months for transfers to or from certain trusts. If a transfer of assets is made during this look-back period by either an applicant or his spouse and the transfer does not fall within any stated exemption, then a period of ineligibility for Medicaid from the beginning of the month following the transfer is imposed (42 USC § 1396p [c] [1] [A]). The "period of ineligibility”, also known as the "transfer penalty period”, is calculated by dividing the dollar amount of the transfer by the average monthly cost of nursing home care in the State or community (42 USC § 1396p [c] [1] [E] [i]). Under the new provision, it is the imposition of this ineligibility period that results in criminal penalties.
The new statute raises several issues of interpretation. First, the penalty only attaches to "a statement, representation, concealment, failure, or conversion” (42 USC § 1320a-7b [a] [6]). However, a "disposition of assets” is not generally any of these activities. Thus, it would appear that no penalty could be attached to the new paragraph (6) unless one interprets the disposition of assets to be the equivalent of a "conversion” (1996 Report to House of Delegates of Am Bar Assn, at 6).
Second, there is an ambiguity as to whether the crime herein is to be classified as a felony or misdemeanor. The wording of the new provision states that the applicable felony penalties apply to providers of services to Medicaid or Medicare recipients and not to beneficiaries. The provision states th§t in the case of any other person, the penalty would be a misdemeanor. However, the conference report summary, in describing the current law, only summarizes the felony penalties. Thus, it is questionable whether an individual penalized under the new provision would be subject to felony or misdemeanor penalties (Swendiman, Medicaid Nursing Home Care: Criminal Penalties for Transfers of Assets, CRS Report for Congress, CRS-5 [Nov. 22, 1996]).
*697 Third, section 217 of the Act contains ambiguities with regard to the persons who may be prosecuted for violating the provision. The new section states that whoever "knowingly and willfully disposes of assets” and later applies for Medicaid will be subject to criminal penalties (42 USC § 1320a-7b [a] [6]). It is clear that this provision would encompass the applicant seeking Medicaid. However, individuals in addition to the applicant could most likely be prosecuted under this section. 18 USC § 2 provides, in pertinent part, that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal”. Therefore, an individual’s attorney, financial planner, or one with the legal authority to dispose of assets, such as a guardian, could possibly be held accountable under section 217 (see, Fish, Criminal Penalties For Medicaid, Motivated Transfers, NYLJ, Sept. 23, 1996, at 1, col 1). Moreover, under the Federal conspiracy statute, 18 USC § 371, two or more persons who conspire to commit a Federal offense or defraud the United States face criminal fines and imprisonment where one of the parties has acted to further a criminal purpose. Thus, this statute enables authorities to hold individuals besides the applicant accountable under section 217 of the Act.
Notwithstanding the applicability of section 217 of the Act, it is clear that some of the assets of a person who anticipates applying for Medicaid can be transferred to others provided that enough resources are retained to sustain the person through the period of ineligibility (see, Kassoff and Robert, Elder Law and Guardianship in New York § 7:114, at 252 [1996]). Thus, the guardian may transfer the AIP’s residence to petitioner, but retain a life estate for the life of the AIP, and transfer other assets of the AIP to her children provided that the available resources retained by the AIP will be sufficient to pay for the AIP’s care during the period of ineligibility imposed (id., § 7:114, at 252; § 7:143, at 265).
Applying the above principles to the instant case, it appears that no period of ineligibility for Medicaid would be imposed as a result of the transfer of the AIP’s residence to petitioner with the AIP retaining a life estate for the life of the AIP and the transfer of some of the AIP’s assets to the AIP’s children, provided said transfers are made in accordance with the formula set forth in the attorney’s affirmation attached to the petition. Of course, this court cannot insulate the guardian or the AIP from State civil liability, or Federal criminal liability in connection with the transfer of the AIP’s property.
*698 The State of New York, which administers the Medicaid program and will review any transaction and decide whether a penalty of a period of Medicaid ineligibility will be imposed, is not a party to this proceeding and not privy to this application. As such, the State of New Yorl$ cannot be bound by this court’s decision. Similarly, no decree of this court can bind the Federal Government or prevent it from commencing criminal proceedings against the guardian or AIP in connection with the transfer.'
Although the decision in Peebler v Reno (965 F Supp 28 [D Ore]) has been hailed as a "ruling which avoids criminal liability in most situations [involving Medicaid planning transfers]” (Fish, Peebler v. Reno’: Granny Does Not Go to Jail, NYLJ, June 13, 1997, at 1, col 1), this court finds that interpretation of the Peebler decision much too broad. Peebler engaged in Medicaid planning by giving half of her available assets to a great-nephew. In doing so, Peebler became ineligible to receive Medicaid for a period of three months. Just after transferring the assets and during the period of ineligibility, Peebler and her attorney, who had advised her to make the transfer, commenced a declaratory judgment action against the United States Attorney General seeking a declaration that section 217 of the Act was unconstitutionally vague. The Attorney General moved to dismiss the action contending that the plaintiffs lacked standing.
The District Court found that the plaintiffs did not have standing because enforcement of section 217 was neither actual nor eminent enough (Peebler v Reno, supra, at 31) and granted the motion to dismiss. Thus, the District Court did not rule on the merits of the application, did not issue any declaration regarding the constitutionality of section 217, and did not indicate that section 217 is not applicable to the transaction made by Peebler.
Much is made of the fact that the memorandum submitted by the Assistant United States Attorneys in Peebler (supra) states that if a person transferring assets waits out the penalty period and then applies for prospective benefits, so that a period of ineligibility is not imposed, "she will not be subject to prosecution under §217” (Fish, Peebler v. Reno’: Granny Does Not Go to Jail, op. cit., at 11, col 3). However, the Peebler court did not issue a declaration to that effect, and it remains to be seen whether the view expressed in the memorandum is adopted nationwide by the United States Attorney’s office, or even by the criminal division of the United States Attorney for *699 the District of Oregon, when the issue is properly presented to a court for determination.
The petitioner also asks for a determination that a portion of the funds held in a savings account in the joint names of the petitioner and the AIP are the petitioner’s alone, and that the petitioner be reimbursed for sums he contributed toward the AIP’s residence. This court is satisfied from the petitioner’s testimony at the hearing, his supplemental affidavit, and the supplemental affirmation of the Court Evaluator, that the funds formerly in the Merrill Lynch Investment account total-ling $16,870 and the $43,000 in funds from petitioner’s business, came solely from petitioner, and that petitioner contributed $23,720 toward the down payment on, and for repairs to, the AIP’s residence. Accordingly, the petitioner shall be reimbursed the sum of $83,590 from the funds of the AIP.
In view of the foregoing, the court will appoint Michael J. DiCecco as guardian for the personal needs and property management of Betty Gersten. The appointment shall be for an indefinite period of time. The court will fix the amount of the bond to be filed by the guardian in the judgment and order. The court grants the guardian the power to transfer the AIP’s residence located at 17 West 12th Road, Broad Channel, New York, to petitioner Michael DiCecco, with a life estate retained for the life of Betty Gersten, and to transfer some of the assets of Betty Gersten to her children, provided that sufficient assets are retained to pay for the needs of Betty Gersten during any penalty period of ineligibility. The court further grants the guardian the power to represent the interests of Betty Gersten in a personal injury action, however, the settlement of any such action shall be subject to this court’s approval; to marshal assets; to pay the ongoing reasonable expenses for Betty Gersten; to make financial decisions on behalf of Betty Gersten; enter into contracts on behalf of Betty Gersten; prepay burial space expenses and create a burial fund for Betty Gersten, however, the amount of the burial expenses and the burial fund shall be subject to this court’s approval; to consent to or refuse generally accepted routine or major medical or dental treatment; to determine who shall provide personal care or assistance to Betty Gersten; to make decisions regarding the social environment and other social aspects of the life of Betty Gersten; to apply for government and private benefits; to choose the place of abode for Betty Gersten; and to authorize access to or release of her confidential records. The court further directs the guardian to complete the training program as *700 set forth in Mental Hygiene Law § 81.39 (b). The judgment and order shall provide blank spaces so that this court may fix the fees for the petitioner’s attorney and for the Court Evaluator.