IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2005 Session

## MILEY HOYT BELL EX REL. ROBERTA L. BELL v. TENNESSEE DEPARTMENT OF HUMAN SERVICES

**Appeal from the Chancery Court for Robertson County**
**No. 17505     Carol A. Catalano, Chancellor**

---

**No. M2004-00526-COA-R3-CV - Filed January 12, 2006**

---

This appeal involves a dispute between a widow and the Tennessee Department of Human Services regarding the Department's denial of her deceased husband's application for Medicaid nursing home benefits. The widow filed a petition for review in the Chancery Court for Robertson County asserting that the Department erred by classifying as available resources four tax deeds for real property in Georgia being held in her revocable trust. The trial court found that the Department's classification of the four tax deeds as available resources was supported by substantial and material evidence. The widow asserts on this appeal that the tax deeds should not have been classified as available resources because they were "unavailable" and because they were income-producing property. Like the trial court, we have determined that the Department's classification of the four tax deeds for real property in Georgia was correct.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Timothy L. Takacs, Hendersonville, Tennessee, for the appellant, Roberta L. Bell.

Paul G. Summers, Attorney General and Reporter, and Pamela A. Hayden-Wood, Senior Counsel, for the appellee, Tennessee Department of Human Services.

### OPINION

### I.

Roberta L. Bell and Miley Hoyt Bell lived in Robertson County. On March 26, 1993, Ms. Bell established a revocable trust under Nevada law called the "Roberta L. Bell Revocable Trust." She named her son, Ronnie Bell, then residing in Dayton Beach, Florida, as trustee. While Ms. Bell cannot recall her specific reasons for setting up the trust, she remembers that she did so on the advice of her son who owns an investment company.

Mr. Bell became ill, and on December 17, 1999, he was admitted to a nursing home in Springfield, Tennessee operated by Beverly Healthcare. The Bells used their own resources to pay for his care. Most of these funds were apparently drawn from the corpus of Ms. Bell's revocable trust. As their assets were depleted by Mr. Bell's healthcare expenses, the Bells, with the assistance of their son, set out to find a way to shift the burden of paying Mr. Bell's nursing home expenses to Medicaid. Their primary challenge was to find a way to comply with Medicaid's $2,000 resource limit for Mr. Bell.

In January 2002, Ronnie Bell used funds in his mother's revocable trust to purchase tax deeds to four separate properties in Georgia for $276,927.35.[1] On February 26, 2002, Ms. Bell filed an application with the Tennessee Department of Human Services (Department) seeking Medicaid nursing home benefits on Mr. Bell's behalf. She supported the application with a resource assessment dated January 31, 2002 stating that she and Mr. Bell had assets worth $370,145.63.[2] This assessment did not mention Ms. Bell's revocable trust or the Georgia tax deeds. However, at the qualification interview, Ms. Bell told the Department about her revocable trust and agreed to provide additional specific information.

Approximately two weeks later, an employee of the Bells' lawyer provided the Department with a copy of the trust, as well as documentation regarding the four Georgia tax deeds the trust had purchased. After being advised to classify the corpus of Ms. Bell's revocable trust as an available resource, the Department performed its own calculation of the Bells' available resources. The Department counted the four tax deeds for the real property in Georgia as available resources and determined that the Bells had $358,118.26 available to them. On May 7, 2002, the Department denied Mr. Bell's application for Medicaid nursing home benefits because the resources available to Mr. Bell exceeded Medicaid's $2,000 resource limit.

Mr. Bell died on May 17, 2002. Thereafter, Ms. Bell requested an administrative review of the denial of Mr. Bell's application for Medicaid benefits. One of the Department's hearing officers conducted a hearing on July 10, 2002 and took the matter under advisement. On March 20, 2003, the hearing officer filed an initial order upholding the denial of Mr. Bell's application. A final order adopting the initial order was entered on April 7, 2003.

On May 13, 2003, Ms. Bell filed a petition for review in the Chancery Court for Robertson County, asserting that the Department's decision that Mr. Bell was "over-resourced" was not supported by substantial and material evidence. The Department filed the entire record of Mr. Bell's application for Medicaid nursing home benefits. Following its review of this record, the trial court

---

[1] Under Georgia law, the purchaser of a delinquent taxpayer's property receives a "tax deed." The purchaser of the property becomes the owner if the delinquent taxpayer does not redeem the property within one year. To redeem the property, the delinquent taxpayer must repay the holder of the tax deed the purchase price of the property plus a premium of 20% per year. The holder of the tax deed may not collect rents or make improvements to the property until it takes possession of the property.

[2] Ms. Bell apparently anticipated that she and Mr. Bell would be entitled to exemptions that would reduce the value of their "available assets" to less than the maximum eligibility limits.

concluded that the Georgia tax deeds in Ms. Bell's revocable trust were not "exempt resources as income producing property under Medicaid rules" and, therefore, that the Department's decision that Mr. Bell was not entitled to Medicaid nursing home benefits because of the Bells' excess resources was supported by substantial and material evidence. Ms. Bell has perfected this appeal.

## II.

The pivotal issue in this case is whether the Department properly classified the four Georgia tax deeds as available resources when it determined Mr. Bell's eligibility for Medicaid nursing home benefits. Ms. Bell insists that the Department erred because (1) the tax deeds were unavailable due to circumstances beyond the Bells' control and (2) the tax deeds qualified as income producing property. We have determined that the record does not support either of these claims.

## A.

Title XIX of the Social Security Act of 1965 established the Medicaid program, a joint federal-state program to provide medical services to low-income persons sixty-five years of age or older, blind persons, disabled persons, and others unable to afford these services. *Roberts v. Sanders*, No. M1998-00957-COA-R3-CV, 2002 WL 256740, at *5 (Tenn. Ct. App. Feb. 22, 2002) (No Tenn. R. App. P. 11 application filed). The program is jointly funded by the federal government and the state governments, and each state operates its own program in accordance with federal requirements. 42 C.F.R. § 430.0 (2005).

Tennessee began participating in the Medicaid program when the Tennessee General Assembly enacted the Medical Assistance Act of 1968.[3] While the Tennessee Department of Health administers the program at the state level, it is assisted with regard to financial matters by the Tennessee Department of Finance and Administration. The Tennessee Department of Human Services likewise assists by making eligibility determinations. Tennessee's program must follow the federal guidelines and must comply with the requirements of Title XIX and the Secretary of Health and Human Services. 42 U.S.C.A. § 1396a (West Supp. 2005); *Schweiker v. Gray Panthers*, 453 U.S. 34, 36-37, 101 S. Ct. 2633, 2636 (1981).

Prior to 1988, the Medicaid eligibility rules required married couples to deplete their combined resources before a spouse residing in a nursing home would be eligible for benefits. In 1988, the Congress enacted the Medicare Catastrophic Coverage Act. *See* 42 U.S.C.A. § 1396r-5. The purpose of this Act was to provide some protection to married persons when one spouse enters a nursing home by enabling the non-institutionalized spouse to continue to reside independently in the community without becoming impoverished.[4] The Act attempted to strike a balance between impoverishing the non-institutionalized spouse and preventing financially solvent institutionalized

---

[3] Act of Apr. 3, 1968, ch. 551, 1968 Tenn. Pub. Acts 496 (codified as amended at Tenn. Code Ann. §§ 71-5-101, -119 (2004 & Supp. 2005)).

[4] H.R. Rep. No. 100-105(II) (1988), *reprinted in* 1988 U.S.C.C.A.N. 857, 888-92.

spouses from receiving Medicaid benefits. *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 798 (6th Cir. 1998).

The process for determining Medicaid eligibility is commonly referred to as a "resource assessment." When an institutionalized spouse applies for Medicaid benefits, the total value of the couple's resources is calculated based on the couple's "countable" or non-exempt assets on the date that the institutionalized spouse becomes institutionalized for thirty days or more. Based on this assessment, the non-institutionalized spouse receives a "community spouse resource allowance" (CSRA) equal to one-half of the couple's "countable" or non-exempt assets. However, this allowance cannot exceed the yearly maximum allowance established by law.[5] The remaining "countable" assets must be spent down to the $2,000 Medicaid resource limit before the institutionalized spouse can qualify for Medicaid nursing home benefits.[6]

Not all of a married couple's assets factor into the calculation of the non-institutionalized spouse's CSRA. For the purposes of the resource assessment, the marital home, household goods, personal belongings, the value of a burial space, and limited amounts for the value of an automobile and for burial expenses are excluded from the calculation.[7] Two other exclusions are of particular relevance to this case. The first exclusion pertains to "[o]ther resources determined to be unavailable to the applicant/recipient due to circumstance beyond his/her control." Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a)(1)(viii). The second involves "income-producing property." Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a)(1)(v).

**B.**

Ms. Bell's primary argument is that both the Department and the trial court erred by concluding that the four tax deeds for the real property in Georgia were not "unavailable" property for the purposes of the exclusion in Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a)(1)(viii). She insists that Mr. Bell would have qualified for Medicaid nursing home benefits had the Department classified the tax deeds as unavailable property. We have determined that the record contains substantial and material evidence supporting the Department's conclusion that the tax deeds were not unavailable due to circumstances beyond the Bells' control.

---

[5] If the non-institutionalized spouse's CSRA, as calculated in the resource assessment, exceeds the maximum pre-established allowance, the amount of the CSRA is reduced to the maximum amount permitted.

[6] Ms. Bell's lawyer provided the following helpful illustration of resource assessment process:

Mr. Jones was institutionalized on June 1, 2004. He and Mrs. Jones have total countable resources on that date consisting of money in their checking and savings accounts of $150,000. The Department of Human Services divides this amount by two, resulting in $75,000. The maximum CSRA when institutionalization occurs in 2004 is $92,760; the minimum is $18,552. DHS therefore sets Mrs. Jones' CSRA at $75,000. Before Mr. Jones can qualify for Medicaid, the couple's countable resources must be no greater than $77,000 (the sum of the CSRA and the $2000 Medicaid resource limit).

[7] 42 U.S.C.A. § 1396r-5(c)(5); Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a) (2003).

The burden is on Ms. Bell, as the applicant, to prove that Mr. Bell was eligible for Medicaid benefits. *Brewer v. Schalansky*, 102 P.3d 1145, 1153 (Kan. 2004); *In re DiCecco*, 661 N.Y.S.2d 943, 945 (N.Y. Sup. Ct. 1997); *Dempsey v. Dep't of Pub. Welfare*, 756 A.2d 90, 95 (Pa. Commw. Ct. 2000). Thus, she has the burden of demonstrating that the four tax deeds for the real property in Georgia were unavailable. *Mistrick v. Div. of Med. Assistance & Health Servs.*, 712 A.2d 188, 198 (N.J. 1998) (holding that an applicant arguing that an asset is an unavailable resource has the burden of proving its unavailability).

Ms. Bell's revocable trust is a "Medicaid qualifying trust."[8] Because the trust was created prior to August 10, 1993, the availability of the trust's principal and income must be determined based on the criteria in 42 U.S.C.A. § 1396a(k)(2).[9] The portion of the trust deemed available is "the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor." 42 U.S.C.A. § 1396a(k)(1); Tenn. Comp. R. & Regs. 1240-3-3-.03(5)(c).

Under the terms of Ms. Bell's revocable trust, her son, as trustee, has broad discretion over both the principal and the income of the trust and can disburse them to Ms. Bell or spend them for her benefit at any time. In addition Ms. Bell herself retains the right to withdraw all or any part of the principal and accumulated income at any time simply by notifying the trustee. Accordingly, none of the resources contained in Ms. Bell's revocable trust, including the four tax deeds, are unavailable simply because they have been placed in the trust. *See* Tenn. Comp. R. & Regs. 1240-3-3-.03(5)(a).[10]

Ms. Bell argues, however, that the four tax deeds should not be considered as available resources because, under Tenn. Comp. R. & Regs.1240-3-3-.03(2)(a) (1)(viii), they are unavailable due to circumstances beyond her control. The evidence does not bear out this argument for two reasons. First, Ms. Bell presented no evidence that these tax deeds are not "available." Second, Ms. Bell presented no evidence that, even if these tax deeds were "unavailable," they became unavailable due to circumstances beyond her control.

---

[8] 42 U.S.C.A. § 1396a(k)(2) (repealed 1993) defines a "medicaid qualifying trust" as "a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." *See also* Tenn. Comp. R. & Regs. 1240-3-3-.03(5).

[9] Trusts are now governed by 42 U.S.C.A. § 1396p(d). However, trusts created prior to the effective date of this statute, August 10, 1993, are to be analyzed for the purposes of Medicaid eligibility as they were prior to the amendment. *Ramsey v. Rizzuto*, 72 F. Supp. 2d 1202, 1212 (D. Colo. 1999); *Maxson v. Dep't of Children & Families*, 869 So. 2d 653, 655 (Fla. Dist. Ct. App. 2004).

[10] Tenn. Comp. R. & Regs. 1240-3-3-.03(5)(a) provides that "[f]unds from a Medicaid qualifying trust . . . are deemed to be available to the applicant/recipient as provided below when an application for Medicaid is filed on or after June 1, 1986 and a countable resource to that applicant/recipient."

The Tennessee Medical Assistance Manual defines "resources" as "cash or other liquid assets or any real or personal property that an individual owns jointly or individually that could be converted to cash and used for support and/or maintenance."[11] It defines "available resources" as resources "for which . . . [the applicant] has the right, authority, ability, or power to liquidate including those deemed available to . . . [the applicant] from a financially responsible relative and the uncompensated value of a transferred asset."[12]

Ms. Bell asserts that the tax deeds should not be considered to be available resources because of the legal limitations placed on them. Under Georgia law, the purchaser of real property at a sale to collect delinquent taxes receives a "tax deed." The title acquired by virtue of a tax deed is not a perfect fee simple title, but rather it is an inchoate or defeasible title, subject to the right of the record owner to redeem the property within twelve months. Ga. Code Ann. § 48-4-40(l) (1999 and Supp. 2000); *Mark Turner Props., Inc. v. Evans*, 554 S.E.2d 492, 494 (Ga. 2001). The tax deed vests the purchaser with a defeasible and taxable fee interest in the property, but it does not entitle the purchaser to exclusive possession of the property until the right of redemption is terminated. *Nat'l Tax Funding, L.P. v. Harpagon Co.*, 586 S.E.2d 235, 238 (Ga. 2003).[13] The holder of a tax deed may sell the property prior to the end of the redemption period subject to the right of redemption. *Durham v. Crawford*, 26 S.E.2d 778, 782 (Ga. 1943); *Decatur County Bldg. & Loan Ass'n v. Thogpen*, 160 S.E. 387, 389 (Ga. 1931). Because Georgia law permits the sale of property subject to a tax deed prior to the expiration of the redemption period, the property is an available resource because it can be liquidated – converted to cash – and used for the applicant's support or maintenance.

Likewise, the conversion of the more liquid assets in Ms. Bell's revocable trust to less liquid tax deeds was not beyond Ms. Bell's control. The record contains substantial and material evidence supporting the Department's conclusion that Ronnie Bell purchased these tax deeds shortly before his mother submitted his father's application for Medicaid nursing home benefits primarily for the purpose of enabling his parents to comply with Medicaid's $2,000 resource limit.

Assets held in a Medicaid qualifying trust are subject to the transfer of assets rules applicable to other assets.[14] Because the tax deeds were purchased in January 2002, the transaction is subject to 42 U.S.C.A. § 1396p, which prohibits the disposal of assets for less than their fair market value

---

[11]Tenn. Med. Assistance Manual, ch. 15, Part I, § A(1), at 13.

[12]Tenn. Med. Assistance Manual, ch. 15, Part I, § A(4), at 13.

[13]Ga. Code Ann. § 48-4-45(a) (Supp. 2000) provides that "[a]fter 12 months from the date of a tax sale, the purchaser at the sale or his heirs, successors, or assigns may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale" by causing appropriate notices of foreclosure to be issued.

[14]U.S. Dep't of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., State Medicaid Manual § 3215.5 (1994).

within thirty-six months of an individual's submission of an application for benefits.[15] Such transactions are presumed to have been for the purpose of establishing eligibility for benefits in the absence of "convincing evidence to establish that the transaction was exclusively for some other purpose." Tenn. Code Ann. § 71-5-106(c). Thus, Ms. Bell has the burden of presenting convincing evidence that the tax deeds were purchased for some purpose other than establishing Medicaid eligibility. *State v. Day*, 531 So. 2d 1244, 1244 (Ala. Civ. App. 1988). Ms. Bell was unable to provide a clear explanation why her revocable trust purchased the tax deeds; however, in response to her lawyer's questions, she conceded that she purchased them because she believed they would enable her husband to qualify for Medicaid.

In addition, Ms. Bell presented only a limited amount of information regarding the purchase of the tax deeds. The documents she provided indicate that the trust purchased the property subject to the tax deeds in late January 2002 from Foxworthy, Inc.[16] The documents also (1) described the properties, (2) provided their appraised value for tax purposes, (3) stated their "initial value" or sale price, and (4) identified the end of the redemption period. They do not provide any information regarding the price that Foxworthy, Inc. paid for the property at the tax sale or any other information regarding the fair market value of the real property itself or fair market value of the tax deeds.[17] Accordingly, the information provided by Ms. Bell is not sufficient to rebut the presumption that the purchase of the tax deeds was chiefly for the purpose of enabling Mr. Bell to qualify for Medicaid nursing home benefits. This presumption supports the Department's conclusion that the four tax deeds held by Ms. Bell's revocable trust were available resources.

## C.

Ms. Bell also asserts that the Department should have classified the four tax deeds as unavailable because they were income-producing property. Tenn. Comp. R. & Regs. 1240-3-3-.03 (2)(a)(1)(v) provides that "all income-producing property" should be excluded from consideration in the determination of eligibility for medical assistance. The regulation further defines "income-producing property" as, among other things, "non-business resources if the rate of return is at least six percent (6%) of the equity value of the resource or within reasonable limits of similar property in the area."[18] Ms. Bell argues that the tax deeds should be considered income-producing because

---

[15] 42 U.S.C.A. § 1396p(c)(1)(A); Tenn. Comp. R. & Regs. 1240-3-3-.03(3)(b)(1).

[16] While the record does not clearly identify the role of Foxworthy, Inc. in the transaction, it appears likely that Foxworthy, Inc. actually purchased the properties at the tax sales and then sold them to Ms. Bell's trust. Such resales are permitted by Georgia law and reinforce our earlier conclusion that the property can be liquidated and, therefore, is an available resource.

[17] The documents indicate that Ms. Bell's trust purchased two of the pieces of property for more than their assessed value for tax purposes.

[18] This is Tennessee's version of the federal "$6,000/6% Rule" that States must use when making eligibility determinations unless they have adopted a stricter rule. *Morris v. Morrow*, 783 F.2d 454, 461 (4th Cir. 1986).

she stands to make a twenty percent profit if the record owner redeems the property within a year following the tax sale.[19] The Department failed to address this argument in its brief.

We have determined that the "income-producing property" exclusion in Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a)(1)(v) applies only to property that produces an income while it is owned by the applicant or his or her spouse. It was not intended to apply to property that could or might yield at least a six percent return on equity when sold. The record contains no evidence regarding the right of a holder of a tax deed under Georgia law to receive income from the property during the redemption period or evidence of whether Ms. Bell's trust received income from any of the properties covered by the tax deeds other than the premium paid when one of the parcels of real property was redeemed. Accordingly, we find that Ms. Bell has failed to carry her burden of proving that the property covered by the four tax deeds should have been excluded under Tenn. Comp. R. & Regs. 1240-3-3-.03(2)(a)(1)(v) as income-producing property.

## III.

Like the trial court, we affirm the Department's decision that Mr. Bell was not eligible to receive Medicaid nursing home benefits. We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal to Roberta L. Bell and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[19] The record indicates that the record owner redeemed one of the pieces of property before the expiration of the redemption period and that Ms. Bell's trust received the twenty percent premium required by Ga. Stat. Ann. § 48-4-42 (1999).